Bradbury, J.
This court being of the opinion that the history of the transaction as disclosed by the record shows that the plaintiff in error, in respect of the matters contained in the account filed by him in the probate court, was acting in his individual capacity and not as executor or trustee under his father’s will, will consider no other question in this opinion; and in fact go very little beyond reciting those parts of the record which have produced this conclusion.
Dr. R. Culver, of Logan, Hocking county, died in 1861, testate, leaving surviving him a widow and four children, the latter, three sons and one daughter were then all of full age. His will was duly probated on the 16th day of April, 1861, and reads as follows:
“In the name of the Benevolent Father of all, I, Reuben Culver, of Logan, Hocking county, Ohio, being now weak in body, but being of sound mind and disposing memory, do make, ordain and publish this my last will and testament, hereby revoking, setting aside and annulling all other and former wills by me made as fully and completely as if the same had never been made.
1. And first, I do hereby make, constitute and appoint my beloved wife, Hannah D. and my two sons, Lueien H. and Lawrence A., executors of this, my last will and testament.
2. Secondly, I do hereby give, devise and bequeath to my said executors to hold as trustees, all of my real estate and personal property of every kind and description in trust for the purposes hereinafter set out.
3. It being my intention to vest in my said executors all of my property of every kind which I may own, or be entitled to at the time of my death, for *183 the purpose of more fully carrying out the trusts hereinafter declared.
4. I direct my said executors to proceed to collect all claims which may he owing to me, except those hereinafter expressly excepted.
5. It is my wish that my said executors shall pay to Hunter & Stanbery the balance due on the two lots in Logan for which I hold their title bond, and take a deed therefor in their names as said trustees, and to proceed to erect thereon, a good, commodious dwelling house.
6. For the purpose of securing a home for my beloved wife and each of my children, I direct that they shall each have the right to occupy as a residence as they may severally wish, the following property, to-wit:
7. For the use of my wife, the entire premises on which I now reside, being about six acres of land with the appurtenances; for my sons Charles Vernon, Lucien Hamden and Lawrence Augustus, the lots on which they reside, giving to Lucien H. the use of the entire lot of which he now occupies but half; and for the use of my daughter Mary Ellen, the two lots and the house provided for in section five (5).
8. Furthermore, it is my wish that my wife have the use of all my household furniture and library and that no inventory be made of the same.
9. The uses to which my said trustees shall hold the property hereinbefore vested in them, is hereby declared to be as follows:
10. First, to pay over to my beloved wife one-third part of the whole proceeds of the same; but if from any unforseen event one-third should not be sufficient to provide her a comfortable support, *184 then that from the residue my trustees provide for her a comfortable support during her life.
11. As to the residue my trustees shall hold the same for the equal benefit, when distribution shall finally be made of my four children, or their heirs if any of them should be dead; but it is my wish that no distribution be made .except by the consent of a majority of my said children, when an entire or partial distribution may be made.
12. In case of the death of any of my children, I direct my trustees to pay over to the legal representative of such child the proportion due to such child as rapidly as the assets shall be converted into money.
13. I request that my lands not hereinbefore mentioned may be sold by my trustees whenever they may be directed to do so by a majority of my children and the proceeds held under the same trust.
14. It is my wish that my trustees shall from time to time invest the funds belonging to my estate; but no investment shall be made without the consent of a majority of my children.
15. I request my executors to remit the balance due me from my beloved brother Cromwell B. Culver.
16. I also give to my affectionate and well beloved nephew, B. P. Culver, my stock of medicines, galvanic battery, and other instruments, saving the case of pocket instruments.
17. Upon final distribution I desire that my trustees convey to each of my children the lots heretofore designated to each; and that in making final settlement the indebtedness of each as shown by note and book account with interest shall be charged to them respectively.
*185 18. In case of the death of either one of my executors the trust hereby granted to all shall be exercised by the survivor.
In testimony whereof I have hereto set my hand and seal and published this, my last will and testament, this 25th day of March, A. D., 1861.”
The widow and the two sons, Lucien H. and Lawrence A., qualified as executors under the will, but the widow does not seem to have taken any part in administering the estate which was estimated at a valuation of about $30,000.00, one-third of which was personal property, the balance real estate. After their appointment and qualification the two brothers entered upon the active management of the estate, ignoring however the probate court. The personal assets were collected and debts and legacies paid, but nothing further was done looking to a settlement of the accounts and distribution of the estate until October 1, 1866, the widow having died in the meantime, when the following statement of the condition of the estate was made:
October 1, 1866, Statement of R. Culver’s estate with approximate estimate of the value of assets: Apr. 1, ’61, Cash on hand and in bank..... $1812 76
Notes good and collectible .... 4682 53
Accounts good and collectible . . . 456 56
Judgments —Adcock $1354.75, Rathburn $169.00 . . . . 1523 75
Stock of Citizens’ Bank..... 2000 00
*186 Real estate:
Homestead . . . .$5000 00
Lot No. 4, Webster’s addition C. V. C. . 1200 00
Lot No. 11, Hansackus addition L. H. C. . 1400 00
Lot No. 24, Main and Mulberry St. L. A. C. ..... . 2500 00
Lots 97 and 98, Hunter Lots, M. E. W. 400 00
Lots 30 and 31, Brickyard ..... 400 00
Out-lots...... 2300 00
Warehouse at deep-cut ...... 600 00
1340 acres in Barton Co., Mo..... 4000 00
240, Tama Co., la. . 1200 00
80, Henry Co., Ohio . 800 00
Personal property . 200 00 20000 00
$30475 60
Deduct amount expended 475 60
$30000 00
Distributive share to each of four heirs. 7500 00
Due L. A. Culver for his distributive share...... 7500 00
DueL. A. Culver from L. H. Culver. . . 174 60
Due L. A. Culver from C. Y. Culver . . 2704 30 10378 90
He receives homestead at appraise *187 ment..... 5000 00
He receives Lot No. 24 appraisement . 2500 00
He owes the estate as per schedule “A” . 2291 40
He receives for balance due 6 shares bank stock . . . 587 50 10378 90
This was the basis of the following family arrangement entered into two days later.
“This .agreement made and entered into, this 3d day of November, A. D., 1866, by and between C. V. Culver, Lucien H. Culver, L. A. Culver and Mary E. Webb, witnesseth:
That, whereas the said parties have for many years had mutual dealings interchangeably, and have this day made full and complete settlement so far as relates to L. A. Culver and find the following results:
C. V. Culver is indebted to L. A. Culver in the sum of $2,704.30 and Lucien H. Culver is indebted to L. A. Culver in the sum of $174.60 as is shown by the schedule of amount hereto annexed:
And whereas the said parties are the children and heirs at law of the late Dr. R. Culver, deceased, and on an estimate made this day, the whole value of the estate left by the said decedent is supposed to be about $30,000, and the distributive share of each heir $7,500:
And whereas it is found that the said L. A. Culver has withdrawn from said estate as a portion of his distributive share the sum of $2,291.40.
Now for the purpose of making a full and final settlement of all claims, or demands owing to the said L. A. Culver by either of the other parties or to either of the said other parties by the said L. A. *188 Culver, and also for the purpose of setting aside to the said L. A. Culver, his full and equal portion of the said estate it is agreed as follows:
1. The said L. A. Culver agrees to convey on demand to Mary E. Culver hereinafter named the house and lot in Reno now occupied by him.
2. The said L. A. Culver also agrees to transfer to Mary E. Webb ten shares of the stock of the First National Bank of Logan which is to be chargeable to her as a payment made by C. V. and L. H. Culver of that amount on her distributive share of said estate; and also at any time to transfer to such party as either C. V. Culver or Lucien H. Culver shall hereafter direct twenty shares of said stock and pay to Mary E. Webb the dividends arising from said twenty shares of stock until such directions shall be given.
3. The said C. V. Culver, Lucien H. Culver and Mary E. Webb agree to release and do hereby release to the said L. A. Culver, his heirs and assigns the following parcels of land, to-wit:
The late homestead of the decedent aforesaid in the town of Logan, county of Hocking, and state of Ohio, containing about six acres more specifically described in a deed made by John B. Zimmerman and wife to the said decedent, dated February 6, 1841, and recorded, in said county, in Book F, page 208, and which was valued at $5,000 in the estimate of said estate, and also lot No. 24, in the town aforesaid, being the same set apart to the said L. A. Culver in the will of said decedent and valued in the foregoing estimate at $2,500.00.
4. The said L. A. Culver hereby releases to the said C. V. Culver, Lucien H. Culver and Mary E. Webb and their heirs and assigns all of the rest and residue of said estate, or any right to partici *189 pate in any distribution of the same, and agrees to join in the execution of any deeds or conveyance of the same as from time to time may be required.
5. It is agreed and understood that any and all claims or demands owing by any of the aforesaid parties to L. A. Culver, or owing by him to any of .the said parties are hereby canceled and discharged without regard to the manner in which claims and demands arose or how they are evidenced.
6. Each of the parties .hereto, hereby agrees at any time on demand of the parties interested, to execute all such further receipts, releases, deeds, conveyances or other assurances of title as shall be necessary in order to more fully and completely to carry out the spirit and interest of this agreement.
7. MaryE. Culver, wife of the said C. Y. Culver; Cynthia B. Culver, wife of the said Lucien H. Culver; LucyH. Culver, wife of the said L. A. Culver, joining herein with their said husbands, assent to the terms of this agreement.
In testimony whereof the said parties named herein have executed this agreement in four parts, each of which are to be taken as originals.
C. Y. Culver, (seal)
Mary E. Culver, (seal)
Lucien H. Culver, (seal)
Cynthia B. Culver, (seal)
Lawrence A. Culver. (seal)
Lucy H. Culver, (seal)
Mary E. Webb, (seal)
It is hereby understood that the amount herein specified as due to L. A. Culver as follows:
From C. V. Culver .... $2704 30
From L. H. Culver .... 174 60 $2878 90
*190 Are discharged as follows:
By the assumption of L. A. Culver’s indebtedness to the estate........ 2291 40
By stock of First National Bank, Logan...... 587 50 $2878 90
C. V. CULVER.”
We think this instrument effected such a division of the estate of R. Culver as was authorized by item eleven of his will. If instead of setting off to Lucien H. Culver, C. V. Culver and Mary E. Webb, jointly, the three-fourths of the estate to which they were entitled the share of each had been severed, and as was done with the share of L. A. Culver, set off to each separately, there would seem to be little ground to contend that it was not a final division of the estate. The period had arrived when a division could be made; the assets had been collected, debts and legacies satisfied, and the widow was dead. No obstacle intervened to prevent a final and complete distribution of the residue of the estate. The parties entitled to share in the distribution were of full age and competent to act. Whether the share of each should be set off in severalty, or whether the shares of two or more should be set off to them jointly, was a matter that concerned them alone. When this contract was executed the authority of L. A. Culver under the will, whether as executor or as trustee in respect of the real estate assigned to his brothers and sister was subordinate to their proprietary rights. They could have sold the estate thus assigned to them without his consent or even against his prohibition, and he would have been bound by this family compact to execute deeds to the purchaser.
*191 It may be that by their sufferance he might have continued to exercise the powers conferred upon him by the will of the testator, and that conveyances subsequently made by him and his co-trustee under those powers would have conveyed a good title to the grantee. This result, however, would not follow because his power to act under the will continued, notwithstanding the family compact; but because being originally clothed with such power by the-will, an express or implied revocation, or termination of it secretly made by the acts of the beneficiaries under that instrument, would not be permitted to affect tona fide grantees for value.
The parties to this contract of distribution may, or may not have fully comprehended its scope and operation. One or two circumstances, however, that reflects strongly upon this question stands out with prominence in every stage of this peculiar transaction. One is the unlimited confidence reposed in each other by the children of Dr. Culver, the testator, and the strength of their devotion to the interests of the family as it was represented by the plaintiff in error. The other is perhaps but a corollary of the first one, and that is: That after this family contract was executed, November 3, 1866, one brother, Lucien H. Culver, lived until the year 1881, a period of fifteen years; the sister lived until 1885, nineteen years thereafter. The other brother is still living. Yet during all that long period of time, the plaintiff in error did not file any account of his transactions in the probate court nor was he required to file one there. If there was any serious doubt as to the effect to be given to the contract of November 3, 1866, the confidence reposed in the plaintiff in error together with this *192 long delay would be entitled to considerable weight as a practical construction of its meaning and tending to show that his brothers and sisters were dealing with him personally.
' Still further: Even if this contract of November 3,1866, had not effected by its own force a division of the estate, its terms were such that, together with long delay, and the manner in which the brothers and sister dealt with each other in the matter, it would be obviously unjust to permit them to resort to a course of procedure which, would involve the rights of sureties on the bond of the executors. If Lucien H. Culver and the sister, Mary Ellen, were alive and urging this claim, the absence of any equity in their favor, as against the sureties on the bond of their brother. Lawrence A. Culver would clearly appear. They reposed full confidence in him, they permitted him to transact the affairs connected with the real estate that had been assigned to them by the terms of the contract as if he were an agent of their own creation and answerable to them only rather than an executor or trustee whose accounts were to be rendered to the probate court. They were of full age and competent to elect in which capacity he should act. After this long delay and in favor of the sureties they should be held to have elected to deal with him as an agent appointed by themselves, for the settlement of whose accounts they must resort to a court of general jurisdiction. The rights of the personal representatives of this brother and sister are in this respect identical with those that the brother and sister would possess if living and before the court.
Counsel urge with great force that if the plaintiff in error is liable to account for his transactions *193 at all it is immaterial whether it is before the probate court or in the court of common pleas under its general jurisdiction. In so far as the judgment will affect him personally this contention may be true. But as we have seen, others, the sureties of the plaintiff in error who are not before the court, may be affected by the judgment. For, if without collusion a judgment should be rendered against him as executor or trustee under the will, these sureties would be bound by such judgment. If the judgment should be against him as an agent created by the parties these sureties would not be liable, for their undertaking related only to such acts as might be done by him under and by virtue of the will. These considerations apply equally to those who may be sureties on an appeal or supersedeas bond. These sureties undertake to answer for their principal only in the character in which the action against him is prosecuted.
The court of common pleas should have dismissed the proceedings.

Judgment reversed.